[No. 4519.   Decided February 25, 1903.]

HENRY YOUNG et al., Respondents, v. CITY OF TACOMA, Appellant.

MUNICIPAL CORPORATIONS — STREET IMPROVEMENTS — INVALIDITY OF ASSESSMENT — REASSESSMENT.

Under Laws 1893, p. 226, which authorizes the making of a reassessment for the cost of public improvements when an assessment has been "set aside, annulled, or declared void by any court, either directly or by virtue of any decision of such court," a city would have jurisdiction to order a reassessment where a portion of an assessment had been invalidated at the suit of a part of the property holders affected thereby.

SAME — COST OF FUTURE REPAIRS — INCLUSION IN ASSESSMENT.

An assessment for the construction of a street improvement cannot, under the city charter of Tacoma, include an assessment

for future repairs to be made to the work so constructed (*McAllister v. Tacoma*, 9 Wash. 272, followed).

SAME — CONTRACT TO KEEP IN REPAIR — QUESTION FOR JURY.

A contract requiring a street contractor to give a bond to the city conditioned that he would at his own expense keep the work done by him in thorough repair from injury by traffic, decomposition and decay for the term of five years from the completion of the contract cannot be determined as a matter of law to be a provision for future repairs, but raises a question of fact to be determined from evidence showing the quality of material employed and the effect of climatic conditions.

SAME — DEDUCTION FROM ASSESSMENT OF ADDED COST OF REPAIRS.

The mere fact that the expense of future repairs may have been included in the original assessment for a street improvement would not invalidate proceedings for a reassessment, but the added cost occasioned in view of the possibility of future repairs should be determined and deducted from the total amount, and reassessment made to cover the balance.

SAME—OBJECTIONS TO ASSESSMENT NOT RAISED BEFORE CITY COUNCIL.

Objections to the inclusion in a street assessment of items for the expense of inspection and engineering on the improvement and of paving between the street railway tracks cannot be urged in the superior court, when they were not specially raised before the city council.

SAME—COST OF STREET CROSSINGS — ASSESSMENT AGAINST ABUTTING OWNERS.

Where a city is given general power over street improvements, without any charter or statutory restriction as to the method of paying the cost of street intersections, such cost may properly be assessed upon the property abutting on the street.

SAME — REASSESSMENT — INTEREST.

In making a reassessment for a street improvement, interest from date fixed for delinquency of the original assessment is properly included therein (*Lewis v. Seattle*, 28 Wash. 639, followed.)

SAME — LIMITATIONS — EXTENSION BY LATER STATUTE.

Where the limitation provided for the commencement of actions affecting street assessments was extended after the accrual of a cause of action thereon, but before the expiration of the limitation in force at the time of such accrual, actions on such street assessment would not be barred until the lapse of the extended period of limitation.

Appeal from Superior Court, Pierce County.—Hon. WILLIAM O. CHAPMAN, Judge. Reversed.

*William P. Reynolds* and *Emmett N. Parker,* for appellant.

*A. R. Titlow, E. M. Hayden* and *James Garvey,* for respondents.

The opinion of the court was delivered by

HADLEY, J.—This appeal is from a judgment of the superior court setting aside and declaring void a reassessment made by the city of Tacoma in certain reassessment proceedings for street improvements made upon a portion of Pacific avenue, in said city. The original proceedings for the improvement were begun in 1893, and provided for paving the street with bituminous rock upon a concrete foundation, and with granite curb stones on both sides of the street. Such proceedings were had that in August, 1893, a contract was entered into between the city of Tacoma and the Tacoma Bituminous Paving Company, by which the said company undertook to construct said work according to the plans and specifications prepared therefor. The contract price was $69,950. An assessment district was created, and the entire cost of the improvement was assessed to the abutting property within the district. The assessment was confirmed in 1894. Thereafter, in 1898, the city instituted reassessment proceedings. The respondents entered objections to the reassessment before the city council, and from an order of the city council denying their objections, and confirming the reassessment roll, they appealed to the superior court. That court entered judgment to the effect that the entire reassessment is void, and the city has appealed to this court.

It is assigned that the court erred in making its seventeenth finding of fact, which is to the effect that the city attempted to collect said assessment under and by virtue of said original assessment, and thereafter abandoned said original assessment, and attempted to make a new assessment upon said property. The court simply finds that the assessment was "abandoned" by appellant, and it is not found that the original assessment had been declared void by some court of record. The statute authorizing reassessments (Session Laws 1893, p. 226) provides that when an assessment has been "set aside, annulled or declared void by any court, either directly or by virtue of any decision of such court," the city may make a new assessment. Respondents urge that there was never any such decision by a court, and, further, that there was a decision declaring the assessment to be valid. The record of another cause was introduced in evidence, from which it appears that certain property holders assailed the original assessment and asked to have it annulled as to their property. The court entered findings of facts and conclusions of law in that case, which were filed January 7, 1897. The conclusions of law entered upon the findings are that, as to certain plaintiffs in that action who signed a certain remonstrance, the assessment was valid, but as to others who did not sign such remonstrance it was void. The record does not disclose that any judgment was ever entered upon said findings and conclusions, and the case rests upon the mere decision of the court as embodied in the findings and conclusions. It will be noted that the decision of the court declares a portion of the assessment valid and a portion void, but we cannot agree with respondents that the record of that case shows an affirmative holding that the original assessment was valid. The validity of the assessment as to any portion of the property is

dependent upon its validity as to all the property affected. There is such in interdependent relation between all the property in an assessment district as makes it necessary that the assessment shall be valid as to all the property properly within the district; and, if not so, the whole assessment becomes void. It would be a harsh rule that would require certain property holders to pay an assessment while others equally benefited are permitted to escape that burden. The special fund to be created depends upon such provisions as shall secure the payment of the whole in order to meet the obligations incurred on the faith thereof. There was no actual judgment annulling the original assessment or any portion of it, but there was a decision of a competent court, regularly entered in the cause instituted for that purpose, holding a portion of the assessment void; and, if that decision is to be given any force at all in the premises, for the reasons already stated it must be held that its effect was to declare void the whole assessment. It will be observed that the statute does not require that an actual judgment shall be entered setting aside the original assessment, but if the assessment is declared void, "either directly or indirectly, by virtue of any decision of such court," it is sufficient to authorize the reassessment. We think the decision mentioned was sufficient to confer jurisdiction for reassessment proceedings under the statute and under the holdings of this court in the following cases: *State ex rel. Hemen v. Ballard,* 16 Wash. 418 (47 Pac. 970); *Tumwater v. Pix,* 18 Wash. 153 (51 Pac. 353); *Port Angeles v. Lauridsen,* 26 Wash. 153 (66 Pac. 403).

Since we entertain the views above expressed, it is unnecessary to discuss other points urged by appellant under this assignment of error.

It is assigned that the court erred in its twenty-fifth

finding of fact. That finding is to the effect that the contract for the improvement of the street required the contractor to give a bond to the city in an amount equal to the contract price, conditioned, among other things, that he would at his own expense keep the work done by him in thorough repair from injury by traffic, decomposition, and decay for the term of five years from the completion of the contract. It is further found by the court that the inclusion of the provision requiring the contractor to keep the work in repair added substantially to the contract price, but that it is impossible from the evidence to determine the amount of the additional cost by reason of such provision. Respondents contend that by reason of the foregoing there is an attempt here to assess at this time for repairs to the street, and it is insisted that this cannot be done under the holding of this court in *McAllister v. Tacoma*, 9 Wash. 272 (37 Pac. 447, 658). In that case it was made a condition of the bids that a bond should be given guarantying the pavement for five years, and it was held that this requirement had the effect of making the abutting property owners pay for repairs for a period of five years, which could not be done, for the reason that nothing in the charter authorized such an assessment for repairs. Appellant insists that this court must have overlooked a charter provision which, it urges, does authorize such an assessment. The language of the charter (Freeholders'. 1890, § 52, subd. 13) to which we are referred is that the city has power "to determine what work shall be done or improvements made." Appellant contends that the above language is so broad and comprehensive that it should be held to include repairs, when the city has determined to include them in an assessment, and that this court was in error when it said, in the case cited, "There is nothing in the charter on the subject of repairs to

streets." We think the construction urged by appellant is too sweeping, and we believe that the words used in the charter refer rather to the kind and character of the improvement in its original construction, and that, in the absence of words specifying repairs, the language used should not be held to include them. We therefore adhere to the holding in *McAllister v. Tacoma, supra,* that an assessment for the construction of a street improvement under the city charter cannot include an assessment for future repairs to be made to the work so constructed. Appellant, however, urges that the repair requirement in this case was in substance nothing more than a required guaranty of the quality of the work, since it called only for repairs necessary to keep the work from injury by "traffic, decomposition, and decay." It is claimed that since there is no requirement for general repairs necessitated by other causes than those specified, the provision related only to the inherent quality of the work and material, and amounted only to a guaranty that the quality of the work and material required by the contract would be properly observed in its original construction. If the repairs contemplated by this contract and bond include anything not arising as an incident to defective work and material in the original construction, then, doubtless, an additional burden is imposed upon the property by way of added expenses for repairs not occasioned by mere defective work and material, and such additional expense for repairs in the future cannot be enforced against abutting property within the rule announced by this court. Whether necessary repairs arising from "traffic, decomposition, and decay," within a period of five years are due wholly to defects in original construction must depend in some measure upon the nature of the improvement and its environment as to the amount of traffic and climatic condi-

tions. If made of wood, it is not improbable that traffic upon a much traveled street may make such repairs necessary within the period named, even though the best materials were used in the first instance; and it is also possible that good material of that class may decompose and decay to the extent of requiring repairs. Whether the best recognized material of the class used in the case at bar, when properly constructed and placed, will withstand all traffic and all ordinary action of the elements for a period of five years, it seems to us is a matter of so much uncertainty that it would be impossible to undertake to determine, as a matter of law, from the language of the contract and bond in question that it extends no further than a mere guaranty against defective construction and material. That is a matter that can only be determined from evidence. Appellant cites a number of cases from other jurisditcions, some of which have been decided since *McAllister v. Tacoma, supra,* which hold that similar contracts to the one now under consideration are not contracts for repairs, but amount only to a guaranty of proper original construction, and that no additional expense is necessarily entailed upon abutting property by reason thereof. While some of those cases are well considered, and may be regarded as strong authority, yet we do not deem it necessary to review them here. The courts are by no means harmonious upon this subject, but, as we have seen, it is not a new question in this court since the decision in *McAllister v. Tacoma, supra.* The view there announced is also in harmony with that of the following cases: *Portland v. Bituminous, etc., Co.,* 33 Ore. 307 (52 Pac. 28, 44 L. R. A. 527, 72 Am. St. Rep. 713); *Kansas City v. Hanson,* 8 Kan. App. 290 (55 Pac. 513); *Alameda Macadamizing Co. v. Pringle,* 130 Cal. 226 (62 Pac. 394, 52 L. R. A. 264, 80 Am. St. Rep.

124); *People ex rel. Hall v. Maher,* 9 N. Y. Supp. 94; *Verdin v. St. Louis,* 131 Mo. 26 (33 S. W. 480); *Fehler v. Gosnell,* 99 Ky. 380 (35 S. W. 1125).

But while we think the expense of future repairs cannot be added to the assessment, yet the mere fact that they may have been so added should not be held to invalidate the whole assessment in this proceeding to reassess. This is a proceeding to determine the amount that shall now be assessed against the property, and, if any sum was improperly included in the cost price, it should be deducted from the total amount, and a proper reapportionment of the balance should be assessed. This rule was pursued in *Fehler v. Gosnell, supra,* where a similar condition was presented, and we think it the just method. What, then, was the additional cost by reason of this provision in the contract and bond? The trial court found that the cost was materially increased, but that the amount could not be determined from the evidence. There was, however, evidence bearing upon that subject, and, while it may not have been of the most convincing character, yet it seems to us, if the court could find from the evidence that the cost was materially increased, it could, based upon evidence in this record, have determined the amount of such increase. It often happens that courts are not satisfied in their own minds as to what may be the exact truth; but, realizing that they must depend upon the frailties and imperfections of human testimony, it becomes their province to make some findings as to material facts when there is any evidence upon the subject. It therefore seems to devolve upon us to make a finding upon this subject. The witness Brown was an officer of the paving company, and as such may be said to be interested. He testified, over objection, that no added cost was considered by his

company on account of the repair requirement when the bids were submitted. His testimony showed, however, that during the five year period his company repaired the street at least three times, the expense of which was borne by the company. It would seem to be almost without the rule of ordinary business experience that his company should have been in no way influenced in the amount of its bid by this prospective and probable expense. The only remaining witnesses upon this subject were Mr. Rydstrom and Mr. Huson. They placed the amount ordinarily added to a bid by reason of such a repair requirement at from ten per cent. to twenty per cent. It is true they did not know what sum was actually added in this case, but they testified as experts familiar with ordinary methods in such cases. Their testimony is in the record without objection, with no motion to strike it, and it is the only direct testimony touching any definite amount. The trial court found that the cost was increased, which we are unwilling to disturb under the evidence; and we think that a further finding must be made as to the amount of such increase, based upon the testimony of the witnesses named. In view of their qualifying expressions as to circumstances that would increase the amount over ten per cent., we think the amount should be fixed at the minimum sum named by them. We therefore find that the cost was increased ten per cent. by reason of the repair requirement, and that amount should be deducted from the total assessment.

It is urged by respondents that items for the expense of inspection and engineering, which were included in the cost price, cannot be included in the reassessment, and the same contention is made as to the cost of that portion of the pavement lying between the street railway tracks and for the space of two feet outside of the rails. The

latter contention is based upon the claim that by an ordinance of the city the street railway company, as a condition of its franchise, was required to pave the space above named. Appellant insists that the ordinance in existence at the time this work was done did not contain such a requirement. But, in any event, this objection was not raised before the city council; and the same is true of the objection now urged concerning engineering expenses. Respondents contend that certain general objections are broad enough to cover these points, but we think not. We find no language in the objections that can be said to have directed the attention of the council to these subjects. The city council is the initiatory tribunal for the hearing of objections, and the objections should be so specifically made there that there can be no doubt as to what that body actually considered and determined. Within the rule announced by this court in *Annie Wright Seminary v. Tacoma,* 23 Wash. 109 (62 Pac. 444), and *McNamee v. Tacoma,* 24 Wash. 591 (64 Pac. 791), and other decisions of this court there cited, we think these objections should have been specifically made in the record before the city council, and that they cannot be raised for the first time in the superior court, an appellate tribunal in this instance; and for the same reason they cannot be urged in this court.

Respondents also contend that the cost of street intersections was improperly included in the assessment. The charter grants the following powers: "To determine what work shall be done or improvements made at the expense in whole or in part of the owners of the adjoining contiguous or proximate property, or others specially benefited thereby." The power thus conferred is general. When the charter or statutory authority specifies no particular method of paying the cost of street intersections, it

is held that the assessing power may assess the cost upon
the property abutting the streets.    *Creighton v. Scott,* 14
Ohio St. 438;  *Cunningham v. Peoria,* 157 Ill. 499 (41 N.
E. 1014) ;   *Conde v. Schenectady,* 164 N. Y. 258 (58 N.
E. 130) ;   Burroughs, Taxation, p. 475.    We therefore
think the city in this instance had the power to assess the
cost of street intersections as it did.

Respondents contend that interest was improperly
included by the city council in the reassessment.    This
question was determined by the decision in *Lewis v. Seat-
tle,* 28 Wash. 639 (69 Pac. 393), and by other cases there
cited.    Interest from the date fixed for delinquency of the
original assessment was properly included in the reassess-
ment.

The statute of limitations is also urged.    The original
assessment was confirmed in 1894.    The limitation at that
time, as construed by this court in *Spokane v. Stevens,*
12 Wash. 667 (42 Pac. 123), was two years.    In 1895 a
ten-year limitation act was passed, which went into effect
prior to the expiration of two years from the confirmation
of the first assessment.    The statute was therefore extended,
and this proceeding is not barred.    *State ex rel, Hemen v.
Ballard, supra; Bowman v. Colfax,* 17 Wash. 344 (49
Pac. 551).

This disposes of all the questions raised which we deem
it essential to discuss.    For reasons stated, the judgment
is reversed, and the cause remanded with instructions to
the court below to enter judgment modifying the reassess-
ment made by the city in the following particular only,
viz. :   An amount equal to ten per cent. of the original
cost of the improvement shall be deducted from the total
reassessment, and the remainder shall be apportioned upon
all the property described in the reassessment roll in the
same relative ratio as now set forth in the roll, with inter-

est added as herein indicated.   The appellant shall recover the costs of the appeal.

FULLERTON, C. J., and MOUNT and DUNBAR, JJ., concur.